**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ADRIANNE MUSCANERE,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 1:21-cv-673** |
| | § | |
| | § | |
| **CHARLES SCHWAB & CO. INC.,** | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Adrianne Muscanere (hereinafter referred to as "Plaintiff"), by and through her undersigned attorneys, files this Original Complaint against Defendant Charles Schwab & Co., Inc. and for causes of action, show as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Adrianne Muscanere is an adult resident and citizen of Austin, Texas.

2.      Defendant Charles Schwab & Co., Inc. ("Charles Schwab"), is and, at all times relevant, was a corporation organized and existing under the laws of the State of California, with its principal office in Texas located at 2309 Gracy Farms Ln, Austin, Texas 78758. Defendant Charles Schwab may be served through its registered agent to wit: National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201. **Service is requested at this time.**

3.      This Court has subject matter jurisdiction over this Cause because the amount in controversy and subject matter are within the jurisdiction of this Court.

4.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2)  because a substantial part of the events or omissions giving rise this claim occurred in this district.

## CONDITIONS PRECEDENT

5.     All conditions precedent to the filing of this action have been met by Plaintiff. She timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division ("TWC-CRD") and has received a Notice of Right to File a Civil Action letter from the EEOC.

## FACTS

6.     Adrianne Muscanere began her employment with Charles Schwab on or about May 2014. She was hired as a Senior Marketing Manager. For the next five years, Ms. Muscanere regularly received raises and performance reviews showing that she "exceeded expectations." She was never disciplined. She was never reprimanded. Indeed, she was regularly rewarded with bonuses and stock for her outstanding performance. By way of example and not limitation, during her tenure at Charles Schwab, Ms. Muscanere received the coveted "Key Contributor" award twice and the "Marketing Excellence" award three times.

7.     In 2019, Ms. Muscanere was transferred to a new team as part of the brand journalism team's reorganization. In September 2019, Ms. Muscanere began reporting to a new Charles Schwab supervisor, Stacy Patton. The management style of Patton greatly differed from her previous team's.

8.     In early fall 2019, Patton asked to have a one on one meeting with Ms. Muscanere. When Ms. Muscanere arrived to the meeting, Patton had the lights off in the office. She had music playing and was dancing suggestively at her desk. She proceeded to tell Ms. Muscanere about a former girlfriend from college, making Ms. Muscanere very uncomfortable. Ms. Muscanere tried to change the subject a few times. However, when Patton continued to discuss her former relationship, Ms. Muscanere left the office. Ms. Muscanere then approached a co-worker to see if

she would attend meetings with Muscanere and Patton because Muscanere did not want to be alone with Patton. Muscanere did not report this incident to Human Resources at that time, but rather chose to attend meetings with co-workers present whenever possible.

9.   Patton was aware that Ms. Muscanere suffered from panic disorder prior to becoming her supervisor. In fall 2019, Ms. Muscanere informed Patton that her panic episodes were being triggered largely by lack of clear guidance, communication, responsiveness, and expectations from Patton. After that conversation, Patton began referencing Ms. Muscanere's panic and anxiety disorder disparagingly in front of co-workers and in private communications in violation of the ADA and HIPPA laws. By way of example and not limitation, Patton would say in team meetings "this doesn't need to go to the top of your 'panic list,' Adrianne"; "Don't get into a 'panic', Adrianne"; "don't go off the ledge"; and "Don't get all worked up about this." Patton's tone in making these comments was always snide and denigrating, to the point that another co-worker noticed and mentioned it to Ms. Muscanere privately.

10.   Ms. Muscanere realized that as uncomfortable as it made her, she would have to ask Patton to refrain from mocking her disorder in front of co-workers. In November 2019, when Ms. Muscanere asked Patton to stop referencing her panic disorder, Patton became very agitated and aggressive. In response, Patton called Ms. Muscanere and very angrily told her "I just won't ask you how you are doing going forward, that is an easy enough solution." Patton also referred to Ms. Muscanere's panic reaction as "emotional immaturity."

11.   After this call, Patton began micromanaging and scrutinizing Ms. Muscanere's work, and continued making demeaning comments including comments about past work of Muscanere's.

12.   On information and belief, at this time a co-worker reported to Tamar Dorsey, Team

Vice President and Patton's supervisor, that they believed that Patton had violated the Charles Schwab Human Relations policy as related to Ms. Muscanere. On information and belief, on December 2, 2019, Dorsey told the co-worker that she would make it a priority to meet with Ms. Muscanere.

13.     By December 9, 2019, Dorsey had not contacted Ms. Muscanere.  Therefore, Ms. Muscanere set up a phone meeting with Dorsey. Ms. Muscanere explained her panic disorder, the behavior of Patton, and the negative effects it was having on her ability to perform. Ms. Muscanere then requested a transfer to another team, as a transfer had just been granted for Ms. Muscanere's co-worker, Page Gaither. Ms. Muscanere expected the transfer to be granted, as she had an almost six-year history of working well and successfully with other teams at Charles Schwab. However, Dorsey was not receptive to anything Muscanere told her about the situation. Her response was "I put the good of the entire team ahead of the good of any one individual person." Dorsey did acknowledge the situation needed to be referred to Human Resources.

14.     On December 17, 2021, Dorsey contacted Ms. Muscanere to tell her that not only was she denying her request to move teams, she would need to appear for a corrective meeting the following day with Human Resources and Patton. This was the first time Ms. Muscanere had ever been asked to attend a corrective meeting.

15.     When Ms. Muscanere spoke to Dorsey to request a team change, she did not feel comfortable telling her about the strange office dancing incident with Patton that had occurred in the fall. Realizing that Dorsey was not involving Human Resources to help Ms. Muscanere, but rather to ambush her in retaliation for making a complaint regarding Patton, Muscanere decided she needed to make an official report of the fall dancing incident. On December 17, 2019, Ms. Muscanere emailed and called the Charles Schwab's Ombudsman in conformity with company

procedure to report this embarrassing and upsetting incident. Ms. Muscanere provided names of the individuals she spoke to at the time of the incident. Ms. Muscanere also notified the Human Relations department. Again, Ms. Muscanere asked to be moved away from Ms. Patton.

16.     On December 18, 2019, at a meeting with Human Resources and Stacy Patton Muscanere was issued a corrective memo for the first time in her career at Charles Schwab. The corrective memo contained inaccurate information and information that had never been communicated to Muscanere.  On information and belief, and the evidence to be shown at trial, the corrective memo was fabricated in retaliation for Ms. Muscanere's disclosure of her panic disorder and her request to move teams, and as a result of a calculated effort of Stacy Patton and Tamar Dorsey.

17.     On January 5, 2020, in reaction to the harassing and retaliatory behavior of Defendant through its employees, Ms. Muscanere had to seek emergency room treatment because the physical manifestations of her anxiety were so severe. Her condition was so severe that she requested and received short term disability leave. Her short term disability leave was extended a number of times per Charles Schwab's recommendation and direction.

18.     On or about February 21, 2020, Ms. Muscanere requested in writing that she be granted reasonable accommodations under the Americans with Disabilities Act. Ms. Muscanere provided medical documentation of her disorder and her doctor's opinion that she could successfully return to Charles Schwab if she were allowed to return to work with a different team.

19.     Defendant Charles Schwab assigned various individuals who were ostensibly working with Ms. Muscanere to find a reasonable accommodation. However, Defendant's efforts were clearly performative only. Defendant kept recommending that Muscanere extend her short-term disability while the search continued, which Ms. Muscanere did through June 18, 2020. Ms.

Muscanere located several appropriate job openings within Charles Schwab, but those jobs were not offered as an accommodation. No reasonable accommodation was made and Ms. Muscanere was notified on June 4, 2019 that she would be terminated on the expiration of her short term disability. On June 18, 2019, Ms. Muscanere was terminated.

20.     As a result of Defendant's wrongful, discriminatory and retaliatory termination, and the ongoing harassment campaign of Dorsey and Patton, Ms. Muscanere suffered a major panic episode resulting in her receiving in-patient care for five days and her participation in a partial hospital program for six hours a day for two weeks. She was diagnosed with Post Traumatic Stress Disorder as a result of the conduct of Defendant. She suffered damages including medical damages, wage damages, and mental distress damages, as described in more detail below.

## INCORPORATION OF FACTS

21.     Plaintiff incorporates by reference all preceding paragraphs in each cause of action and damages below.

## CAUSE OF ACTION – DISABILITY DISCRIMINATION

22.     Section 12112(a) of the Americans with Disabilities Act ("ADA"), as amended, provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Defendant Charles Schwab is a covered entity under the ADA. Section 21.051 of the Texas Labor Code provides that the employer commits an unlawful employment practice if, because of disability, the employer discharges an individual or discriminates in any other manner against an individual in connection with her compensation or the terms, conditions, or privileges of her employment.

23.    An unlawful employment practice in violation of  the ADA the Texas Labor Code occurred in this instance because Defendant Charles Schwab discriminated against Ms. Muscanere and terminated her because of her disability.

24.    Ms. Muscanere's privacy was also violated under the ADA and HIPPA.

25.    Ms. Muscanere has sustained serious damages as a result of Defendant Charles Schwab's actions and her discharge.

## CAUSE OF ACTION – FAILURE TO ACCOMODATE

26.    Section 12112(b) (5) (A) of the ADA, as amended, provides that the term "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Section 21.128 of the Texas Labor Code provides that the employer commits an unlawful employment practice if the employer fails or refuses to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified employee with a disability.

27.    An unlawful employment practice in violation of the ADA and the Texas Labor Code and occurred in this instance because Defendant Charles Schwab refused to engage in good faith in the interactive process as required by law.

28.    An unlawful employment practice in violation of the ADA and the Texas Labor Code occurred in this instance because Defendant Charles Schwab failed or refused to make a reasonable workplace accommodation for Ms. Muscanere's disability.

**CAUSE OF ACTION – RETALIATION**

29.     Both the ADA and the Texas Labor Code provide that an employer commits an unlawful employment practice if it retaliates or discriminates against a person who engaged in protected activity. A request for a reasonable accommodation is a protected activity under both the ADA and the Texas Labor Code and.

30.     An unlawful employment practice in violation of the ADA and the Texas Labor Code occurred in this instance because Defendant Charles Schwab retaliated and discriminated against Ms. Muscanere for requesting reasonable accommodations and for exercising her rights under the anti-discrimination laws.

31.     Ms. Muscanere has sustained serious damages as a result of Defendant's actions and her discharge.

**CAUSE OF ACTION - HARASSMENT**

32.     Additionally and/or in the alternative, Defendant's conduct as described herein was calculated harassment against Ms. Muscanere. Defendant, through its employees acting in the course and scope of their employment, colluded to attack and "manage out" Ms. Muscanere due to Ms. Muscanere's disability and exercise of her rights. Further, Defendant's employee's behavior toward Ms. Muscanere was inappropriate and created a hostile working environment.

**CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

33.     Additionally and/or in the alternative, the behavior of Defendant described herein was extreme and outrageous. Defendant intentionally embarked on a campaign to denigrate Ms. Muscanere in front of peers and through company channels, causing extreme severe emotional distress to Plaintiff.

## DAMAGES

34.     As a direct and proximate result of the aforementioned discriminatory and retaliatory unlawful acts, Plaintiff has suffered grievous harm, including, but not limited to, past and future medical costs, substantial loss of past and future income and benefits, humiliation, grief, shame, worry, and embarrassment. Plaintiff sues for equitable relief, compensatory and punitive damages, attorneys' fees, taxable court costs, past and future wages.

35.     Defendant engaged in discriminatory practices with malice or with reckless indifference to Plaintiff's state and federally protected rights. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## ATTORNEY'S FEES

36.     Defendant's action and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services the undersigned attorneys in initiating this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees under the applicable statutory law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Adrianne Muscanere prays for judgment against Defendant, individually and collectively, jointly and severally, as follows:

(a)     Trial by jury;

(b)     Judgment against Defendant for all compensatory and punitive damages;

(c)     Judgment against Defendant for all other relief sought by Ms. Muscanere under this Complaint;

(d)     For reasonable attorney's fees and costs;

(e)      For such further and other relief the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts and as to all issues.

Dated: July 30, 2021

Respectfully Submitted,


*/s/ Ethan L. Shaw*
Ethan L. Shaw
TEXAS BAR NO. 18140480
**SHAW COWART, LLP**
1609 Shoal Creek Blvd., Suite 100
Austin, Texas 78701
Phone: (512) 499-8900
Fax: (512) 320-8906
Email: elshaw@shawcowart.com

***Counsel for Plaintiff Adrianne Muscanere***